**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

TIMOTHY COOKE,                        )
                                      )
                    Plaintiff,        )
                                      )
          v.                          )        1:17CV841
                                      )
CAROLYN W. COLVIN,                    )
Acting Commissioner of Social         )
Security,                             )
                                      )
                    Defendant.        )


**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Timothy Cooke, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 14; see also Docket Entry 11 (Plaintiff's Memorandum), Docket Entry 16 (Defendant's Amended Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

**I.  PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI, alleging an onset date of December 18, 2011. (Tr. 229-37.) Upon denial of those applications initially (Tr. 57-86, 121-31) and on reconsideration

(Tr. 87-118, 133-50), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 151-53). Plaintiff failed to appear at the hearing, and the ALJ rescheduled the hearing. (See Tr. 42-56.)[1] Plaintiff, his attorney, and a vocational expert ("VE") attended the rescheduled hearing. (Tr. 27-41.)[2] The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 8-19.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 225-28), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through March 31, 2016.

. . .

2. [Plaintiff] has not engaged in substantial gainful activity since January 24, 2016, the [amended] alleged onset date.

3. [Plaintiff] has the following severe impairments: COPD; degenerative disc disease; and osteoarthritis.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] The record does not contain an explanation for Plaintiff's absence at the first hearing.

[2] On the day of the rescheduled hearing, Plaintiff amended his onset date to January 24, 2016, his fiftieth birthday. (See Tr. 11, 263.)

. . .

5.  . . . [Plaintiff] has the residual functional
capacity to perform light work . . . with exceptions: He
can frequently balance, stoop, kneel, crouch, or crawl.
He must avoid concentrated exposure to fumes, dust,
gases, and pulmonary irritants.  He can frequently
operate pedals with his left foot.

. . .

6.  [Plaintiff] is unable to perform any past relevant
work.

. . .

10.  Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [he] can perform.

. . .

11.  [Plaintiff] has not been under a disability, as
defined in the [] Act, from January 24, 2016, through the
date of this decision.

(Tr. 13-19 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security

Commissioner's denial of social security benefits."  Hines v.

Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope

of [the Court's] review of [such a] decision . . . is extremely

limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Plaintiff has not established entitlement to relief under the

extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard." Hines, 453 F.3d at 561
(internal brackets and quotation marks omitted). "Substantial
evidence means 'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'" Hunter v. Sullivan,
993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402
U.S. 389, 390 (1971)). "It consists of more than a mere scintilla
of evidence but may be somewhat less than a preponderance." Mastro
v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and
quotation marks omitted). "If there is evidence to justify a
refusal to direct a verdict were the case before a jury, then there
is substantial evidence." Hunter, 993 F.2d at 34 (internal
quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal
brackets and quotation marks omitted). "Where conflicting evidence
allows reasonable minds to differ as to whether a claimant is
disabled, the responsibility for that decision falls on the

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

the ALJ must assess the claimant's residual functional capacity ("RFC")." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to explain why he did not grant Plaintiff's request for a [consultative examination ('CE')] to assess Plaintiff's intelligence" (Docket Entry 11 at 4 (bold font and single-spacing omitted)); and

2) "[t]he ALJ erred by failing to evaluate Listing 12.05C" (id. at 6 (bold font omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 16 at 5-13.)

## 1. Request for IQ Testing

In Plaintiff's first issue on review, he argues that "[t]he ALJ erred by failing to explain why he did not grant Plaintiff's request for a CE to assess Plaintiff's intelligence."  (Docket Entry 11 at 4 (bold font and single-spacing omitted).)  In particular, Plaintiff asserts that his "administrative attorney requested the ALJ to order a psychological CE to assess Plaintiff's intelligence five months before the first hearing" and "renewed this request at [Plaintiff's first hearing,]" but that the ALJ "did not even indicate in a perfunctory manner that he rejected the request – it is not mentioned in the [ALJ's] decision at all." (Id. (citing Tr. 45-46, 351).)  Plaintiff deems the ALJ's failure to rule on Plaintiff's request for IQ testing "harmful" (id.),

because Plaintiff's school records, which "contain[ed] IQ scores . . . in Listing 12.05C range" and demonstrated that "he was testing several grades below grade level at the second to fourth grade levels[,]" constituted "sufficient evidence before the ALJ to create a reasonable suspicion that Plaintiff suffered from a degree of mental retardation as defined by [Listing] 12.05 . . . thereby requiring that the ALJ order a *necessary* consultative IQ examination." (Id. at 5 (citing Tr. 285, 291) (internal quotation marks omitted).) Here, the ALJ did not err by failing to rule on Plaintiff's request for IQ testing (or to order such testing), because the record shows that Plaintiff abandoned his request for such testing while his claims remained pending before the ALJ.

Plaintiff retained his administrative counsel on March 1, 2013, the same day that he applied for DIB and SSI. (See Tr. 119-20, 229-37.) On March 5, 2013, Plaintiff's counsel completed a Disability Report - Adult (see Tr. 266-74), and listed only "COPD[,]" "Degenerative Spine Disease[,]" "Anxiety[,]" and "Depression[,]" in response to a request to "[l]ist all of the physical or mental conditions (including emotional or learning problems) that limit [Plaintiff's] ability to work" (Tr. 267).[7] Plaintiff's administrative counsel also indicated that Plaintiff could speak, read, and write more than his name in English (see Tr.

_____

[7] Although the Disability Report itself does not reflect the date on which Plaintiff's administrative counsel completed the Report (see Tr. 274), the index of the administrative transcript reflects a date of March 5, 2013, for the Report (see Docket Entry 8 at 3).

266), and did not attend special education classes (see Tr. 268).
However, in the "Remarks" section of the Disability Report,
Plaintiff's administrative counsel noted that Plaintiff had "a
learning disability and had to have help through school so [he]
could pick up on things." (Tr. 274.) Thus, at this point in the
administrative process, the Disability Determination Services
("DDS") had some notice, albeit not very compelling notice, that
Plaintiff claimed to have a learning disability.

On March 23, 2013, just 18 days after Plaintiff's
administrative counsel completed the Disability Report, Plaintiff
attended a consultative psychological examination at the request of
the DDS. (See Tr. 499-501.) At that examination, Plaintiff
"denied ever having learning problems or significant behavioral
problems during his school years" (Tr. 499 (emphasis added)),
"denied problems with his concentration[,]" and stated that he
could "keep up with [his family's] money, but he d[id] not like to
do it" (Tr. 500). Consultative examiner Philip B. Hatfield, Ph.D.,
diagnosed only "depressive disorder not otherwise specified . . .
mild in impact[,]" and noted that Plaintiff could "use technology
such as cellular phones [and] word processing[,] and [could] access
the internet using a computer." (Tr. 501.) Accordingly, as of
March 23, 2013, Plaintiff abandoned any prior claim that he (or his
administrative counsel) may have made that Plaintiff suffered from
a learning disability.

Following this consultative psychological examination, on April 5, 2013, Plaintiff submitted his academic records from Elkin City Schools. (Tr. 283-321; see also Docket Entry 8 at 3 (index of administrative transcript reflecting submission date of April 5, 2013).) Those records indicate that Plaintiff failed the first, seventh, and eighth grades (see Tr. 284), tested two to three grades below his grade level on the California Achievement Test ("CAT") in sixth and seventh grades, and obtained total IQ scores of 67 (age 14) and 70 (age 15) on the Short Form Test for Academic Aptitude, Level 4 ("SFTAA-4") (Tr. 291).

Nearly three years later, on January 25, 2016, Plaintiff's administrative counsel sent a letter to the Office of Disability Adjudication and Review ("ODAR"), contending that Plaintiff's school records, which showed that Plaintiff "repeated multiple grade levels, earned very poor grades in his academic courses, and received IQ scores as low as 67[,]" should "have supported [DDS] scheduling a consultative examination to further assess [Plaintiff's] intellectual functioning." (Tr. 351.) Plaintiff's administrative counsel requested ODAR to schedule "a psychological CE, including IQ testing, . . . prior to [Plaintiff's] hearing." (Id.)

On June 8, 2016, Plaintiff failed to appear at his scheduled administrative hearing before an ALJ. (See Tr. 44-45.) The ALJ nevertheless asked Plaintiff's administrative counsel about the

basis for his request for IQ testing, and Plaintiff's administrative counsel identified "three IQ scores in [Plaintiff's] school records that [we]re 70 or below" (Tr. 45), as well as argued that the school records "support that beyond the sixth grade [Plaintiff] was only socially promoted" and that Plaintiff qualified as "marginal educationally" (Tr. 46). Plaintiff's administrative counsel then raised the possibility of the ALJ finding Plaintiff disabled based upon the application of Rule 201.12 of the Medical-Vocational Guidelines ("Grids") as of his fiftieth birthday on January 14, 2016 (see Tr. 48-49),[8] and requested the ALJ "to make a decision on the record rather than dismiss the case" (Tr. 50 (emphasis added)). After some discussion between the ALJ, the VE, and Plaintiff's administrative counsel (see Tr. 51-55), the ALJ asked Plaintiff's administrative counsel, "Anything further on this one?" to which Plaintiff's administrative counsel responded, "No." (Tr. 56). The ALJ then indicated that he would "probably go ahead and make a decision on the record[,]" to

---

[8] "The Grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits h[er] to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the [table or] rule directs a finding of 'disabled' or 'not disabled.'" Black v. Astrue, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), recommendation adopted, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished). Rule 201.12, relied upon by Plaintiff's administrative counsel, directs a finding of "Disabled" for a claimant who can perform no more than sedentary work, has attained the age of 50 to 54, graduated from high school, and has unskilled or no past relevant work. See 20 C.F.R., Pt. 404, Subpt. P, App'x 2, § 201.12.

which Plaintiff's administrative counsel responded, "Okay." (Id. (emphasis added).)  Plaintiff requested neither that the ALJ to make an express ruling on Plaintiff's request for IQ testing nor that the ALJ issue an order for IQ testing prior to the ALJ making his decision on the record.  (See Tr. 56.)  Plaintiff thus abandoned his request for IQ testing.

Subsequently, the ALJ ordered a new hearing and, at that hearing, the following exchange took place between Plaintiff's administrative counsel and the ALJ:

ALJ:      Are we expecting any late filed exhibits?

COUNSEL: No, Your Honor.

ALJ:      All right.  We'll go ahead and close the record at the end of the hearing today then.

(Tr. 30 (emphasis added).)  Moreover, although Plaintiff's administrative counsel elicited some testimony from Plaintiff regarding his education level and limited ability to read (see Tr. 35-36), Plaintiff's administrative counsel did not even mention, much less renew his motion for IQ testing (see Tr. 27-41).  At the end of Plaintiff's testimony, the following discussion occurred between the ALJ and Plaintiff:

ALJ:         Is there anything else you want me to know to make a fair decision in your case?

PLAINTIFF:   No, sir, I guess that's about it.

ALJ:         Okay.  Well I just want to make sure we covered everything.

(Tr. 37.) Furthermore, although the ALJ granted Plaintiff's administrative counsel the opportunity to give an opening statement and a closing argument (see Tr. 30), he opted to give neither and made no arguments regarding a need for IQ testing, Plaintiff's alleged learning disability, or whether Plaintiff's learning disability met or equaled Listing 12.05C (see Tr. 27-41). After an unfavorable decision by the ALJ, Plaintiff's administrative counsel then argued to the Appeals Council that "[t]he ALJ failed to fulfill his duty to develop the record by failing to order a psychological consultative exam . . . including IQ testing." (Tr. 228.)

As the above-described progression of events makes clear, Plaintiff abandoned his request for IQ testing while his claim remained pending before the ALJ. Plaintiff cannot now complain that the ALJ failed to rule on Plaintiff's request for IQ testing (or failed to order such testing) when he had two different opportunities to raise those matters before the ALJ but failed to do so. See Phillips v. Colvin, 593 F. App'x 683, 684 (9th Cir. 2015) (finding issue "waived by [the plaintiff's] failure to raise it at the administrative level when he was represented by counsel"); Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001) (deeming matter waived based on the claimant's failure to raise issue at hearing before ALJ); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (ruling that, "at least when claimants are represented by

counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); Garza v. Commissioner of Soc. Sec., No. 1:14-CV-1150, 2015 WL 8922011, at *6 (W.D. Mich. Nov. 25, 2015) (unpublished) ("Now, after the claims were denied, [the] plaintiff raises an issue on appeal in this [c]ourt that should have been raised and preserved long ago during the administrative process. Courts generally do not tolerate sandbagging."), recommendation adopted, No. 1:14-CV-1150, 2015 WL 8958469 (W.D. Mich. Dec. 15, 2015) (unpublished); Pawlowski v. Astrue, 800 F. Supp. 2d 958, 967 (N.D. Ill. 2011) (noting that "[j]udicial review of an ALJ's decision is not a game of Gotcha").

In sum, Plaintiff's first assignment of error lacks merit.

## 2. Listing 12.05C

Plaintiff next asserts an entitlement to relief because "[t]he ALJ erred by failing to evaluate Listing 12.05C." (Docket Entry 11 at 6 (bold font omitted).) In particular, Plaintiff contends that the record contains evidence that Plaintiff can meet all three requirements of Listing 12.05C, i.e., a valid IQ score from 60 to 70, an additional physical impairment significantly limiting work-related functions, and deficits in adaptive functioning that manifested before age 22. (Id. at 6-8.) According to Plaintiff, because "there is ample evidence in the record supporting a finding that [Plaintiff] meets or medically equals Listing 12.05C, . . . it

cannot be said that the ALJ's failure to evaluate the listing is harmless." (Id. at 8 (citing Odoms v. Colvin, 1:15-cv-252-MOC, 2016 WL 3679293, at *7 (W.D.N.C. Jul. 11, 2016) (unpublished), Dial v. Colvin, 1:16-cv-70-CCE-JEP, 2016 WL 6997502, at *6 (M.D.N.C. Nov. 30, 2016) (unpublished)).) Plaintiff's arguments in this regard do not entitle him to reversal or remand.

"Under Step 3, the [Social Security Administration's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in [A]ppendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration requirement.'" Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted). "The listings set out at 20 CFR [P]t. 404, [S]ubpt. P, App['x] 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." Bennett, 917 F.2d at 160 (citing Zebley, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); see also Zebley, 493 U.S. at 530 ("An impairment

16

that manifests only some of th[e] criteria [in a listing], no matter how severely, does not qualify.").

An ALJ must identify the relevant listed impairments and compare them to a claimant's symptoms only where "there is <u>ample evidence</u> in the record to support a determination that [the claimant's impairment] met or equalled [sic] one of the [ ] impairments listed in Appendix 1 . . . ." <u>Cook v. Heckler</u>, 783 F.2d 1168, 1172 (4th Cir. 1986) (emphasis added); <u>see also</u> <u>Russell v. Chater</u>, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) ("<u>Cook</u> . . . does not establish an inflexible rule requiring an exhaustive point-by-point discussion [of listings] in all cases."); <u>Ollice v. Colvin</u>, No. 1:15CV927, 2016 WL 7046807, at *3 (M.D.N.C. Dec. 2, 2016) (unpublished) (Peake, M.J.) ("[A]n ALJ is not required to explicitly identify and discuss every possible listing; however, he must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination where the 'medical record includes a <u>fair amount of evidence</u>' that a claimant's impairment meets a disability listing." (emphasis added) (quoting <u>Radford</u>, 734 F.3d at 295)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Jan. 10, 2017) (Osteen, Jr., J.).

In order to meet the requirements of Listing 12.05C, a claimant must demonstrate: 1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning

initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22" ("adaptive deficits"); 2) "[a] valid verbal, performance, or full scale IQ of 60 through 70"; and 3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05C.   In this case, at step two, the ALJ did not find that Plaintiff suffered from any kind of intellectual disability (see Tr. 13-14), and at step three, the ALJ did not discuss whether Plaintiff's intellectual functioning met or medically equaled Listing 12.05 (see Tr. 14-15).   However, the ALJ did not err by failing to discuss Listing 12.05C, because the record lacks "ample evidence" that Plaintiff's intellectual functioning met or medically equaled Listing 12.05C.   Cook, 783 F.2d at 1172.

Assuming, arguendo, that the record demonstrates Plaintiff suffered from a physical impairment imposing an additional and significant work-related limitation of function and adaptive deficits that manifested before age 22, the record does not contain a valid IQ score from 60 to 70.   Although Plaintiff obtained a total IQ score of 67 at age 14 and a total IQ score of 70 at age 15 on the SFTAA-4 (see Tr. 291), neither of those IQ scores qualify under Listing 12.05C for three reasons.[9]

---

[9] "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the Commissioner] use[s] the lowest of these in
(continued...)

First, the regulations make clear that, because "the results of IQ tests [generally] tend to stabilize by the age of 16," IQ test scores "obtained between the ages of 7 and 16" remain valid for only two years. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 112.00D.10. Thus, for purposes of Listing 12.05C, Plaintiff's total IQ score of 67 obtained in March 1980 at age 14 would have remained valid only until March 1982, and his total IQ score of 70 obtained in April 1981 would have remained valid only until April 1983. (See Tr. 291.)

Second, the regulations emphasize that "[s]tandardized intelligence test results are essential to the adjudication of all cases of intellectual disability[,]" 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00D.6.b, and that a "standardized psychological test" means "a psychological test measure that has appropriate validity, reliability, and norms, and is _individually administered_ by a qualified specialist[,]" _id._, § 12.00D.5.a; _see also_ American Psychiatric Ass'n, _Diagnostic & Statistical Manual of Mental Disorders_ 37 (5th ed. 2013) ("DSM-V") ("Intellectual functioning is typically measured with _individually administered_ and psychometically valid, comprehensive, culturally appropriate, psychometrically sound tests of intelligence." (emphasis added)).

[9] (...continued)
conjunction with [Listing] 12.05." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00D.6.c.

                                    19

The record here contains no evidence that Plaintiff's middle school administered the SFTAA-4 to Plaintiff individually. (See Tr. 291.)

Third, the regulations require clinical observations by the qualified testing specialist regarding a claimant's performance on the test, and an assessment of the scores' validity and consistency with the claimant's functional limitations. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00D.5; see also DSM-V 37 ("Clinical training and judgment are required to interpret test results and assess intellectual performance."). Again, the record does not reflect that the individuals who administered the SFTAA-4 to Plaintiff submitted any such observations or assessments with the test scores. (See Tr. 291.)

In short, because the record lacks "ample evidence" that Plaintiff's intellectual functioning met or medically equaled Listing 12.05C, Cook, 783 F.2d at 1172, the ALJ did not err by failing to discuss that Listing at step three.

## III.  CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that

Defendant's Motion for Judgment on the Pleadings (Docket Entry 14)

be granted, and that judgment be entered for Defendant.

    /s/ L. Patrick Auld
       L. Patrick Auld
United States Magistrate Judge

August 21, 2018